## [ORAL ARGUMENT NOT SCHEDULED]

## NO. 25-5072

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA

In re ELON MUSK, in his official capacity, *et al.*,

Petitioners.

On Petitioners' Emergency Motion for a Stay Pending a Ruling on Government's Petition for A Writ of Mandamus and an Immediate Administrative Stay

### RESPONSE IN OPPOSITION TO PETITIONERS' EMERGENCY MOTION FROM RESPONDENTS NEW MEXICO, ARIZONA, MICHIGAN, CALIFORNIA, CONNECTICUT, HAWAI'I, MARYLAND, MASSACHUSETTS, MINNESOTA, NEVADA, OREGON, RHODE ISLAND, VERMONT, & WASHINGTON

RAÚL TORREZ
  *Attorney General of New Mexico*
STEVEN PERFREMENT*
  *Senior Litigation Counsel*
408 Galisteo Street
Santa Fe, NM 87501

KRISTIN K. MAYES
  *Attorney General of Arizona*
Joshua Bendor*
  *Solicitor General*
2005 North Central Avenue
Phoenix, AZ 85004

DANA NESSEL
  *Attorney General of Michigan*
JASON EVANS
  *Assistant Attorney General*
525 W. Ottawa St
Lansing, MI 48933

\* *Counsel of Record*

Date: March 24, 2025

(Names and addresses of additional counsel appear on inside cover.)

**RAÚL TORREZ**
Attorney General of the State of New Mexico

Anjana Samant
*Deputy Counsel*
James Grayson
*Chief Deputy Attorney General*
Julie Sakura
*Senior Litigation Counsel*
Astrid Carrete
Malina Simard-Halm
*Assistant Attorneys General*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
jgrayson@nmdoj.gov
asamant@nmdoj.gov
jsakura@nmdoj.gov
acarrete@nmdoj.gov
msimard-halm@nmdoj.gov
(505) 270-4332
*Attorneys for the State of New Mexico*

**DANA NESSEL**
Attorney General, State of Michigan

Joseph Potchen
*Deputy Attorney General*
Linus Banghart-Linn
*Chief Legal Counsel*
Michigan Department of Attorney General
525 W. Ottawa St
Lansing, MI 48933
(517) 335-7632
evansj@michigan.gov
potchenj@michigan.gov
*Attorneys for the People of the State of Michigan*

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

Daniel C. Barr
*Chief Deputy Attorney General*
Joshua Katz
*Assistant Attorney General*
2005 North Central Avenue
Phoenix, AZ 85004
(602) 542-3333
Daniel.barr@azag.gov
Joshua.katz@azag.gov
*Attorneys for the State of Arizona*

**ROB BONTA**
Attorney General for the State of California

Nicholas R. Green
*Deputy Attorney General*
Thomas S. Patterson
*Senior Assistant Attorney General*
Mark R. Beckington
John D. Echeverria
*Supervising Deputy Attorneys General*
Maria F. Buxton
Michael E. Cohen
Carolyn F. Downs
*Deputy Attorneys General*
California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
(415) 510–4400
nicholas.green@doj.ca.gov
*Attorneys for the State of California*

i

**WILLIAM TONG**
Attorney General for the State of
Connecticut

Timothy Holzman
*Assistant Attorney General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.Skold@ct.gov

*Attorneys for the State of Connecticut*


**ANNE E. LOPEZ**
Attorney General for the State of
Hawai'i

Kaliko'onālani D. Fernandes
*Solicitor General*
David D. Day
*Special Assistant to the Attorney
General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawai'i*


**ANTHONY G. BROWN**
Attorney General for the State of
Maryland

Adam D. Kirschner
*Senior Assistant Attorney
General*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6424
AKirschner@oag.state.md.us

*Attorneys for the State of Maryland*


**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

Gerard J. Cedrone
*Deputy State Solicitor*
Massachusetts Office of the Attorney
General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2282
gerard.cedrone@mass.gov

*Attorneys for the State of
Massachusetts*

**KEITH ELLISON**
Attorney General for the State of
Minnesota

Liz Kramer
  *Solicitor General*
445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 757-1010
liz.kramer@ag.state.mn.us

*Attorneys for the State of Minnesota*


**AARON D. FORD**
Attorney General for the State of
Nevada

Heidi Parry Stern
  *Solicitor General*
Office of the Nevada Attorney
General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Attorneys for the State of Nevada*


**DAN RAYFIELD**
Attorney General for the State of
Oregon

Benjamin Gutman
  *Solicitor General*
Philip Thoennes
  *Senior Assistant Attorney General*
1162 Court St. NE
Salem, Oregon 97301-4096
(503) 378-4402
benjamin.gutman@doj.oregon.gov
philip.thoennes@doj.oregon.gov

*Attorneys for the State of Oregon*


**PETER F. NERONHA**
Attorney General for the State of
Rhode Island

Katherine Connolly Sadeck
  *Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400
ksadeck@riag.ri.gov

*Attorneys for the State of Rhode
Island*

**CHARITY R. CLARK**
Attorney General for the State of
Vermont

Ryan P. Kane
   *Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153
ryan.kane@vermont.gov

*Attorneys for the State of Vermont*

**NICHOLAS W. BROWN**
Attorney General for the State of
Washington

Kelsey Endres
   *Assistant Attorney General*
Emma Grunberg
   *Deputy Solicitor General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
kelsey.endres@atg.wa.gov
emma.grunberg@atg.wa.gov

*Attorneys for the State of Washington*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

A. Parties and Amici.
   All parties appearing before the district court and in this court are listed in
   the Brief for Defendants-Petitioners.


B. Rulings Under Review.
   References to the rulings at issue appear in Brief for Defendants-Petitioners.


C. Related Cases.
   As stated in Brief for Defendants-Petitioners, this case has not been before
   this Court. Counsel for Plaintiffs-Respondents are aware of no cases raising
   related issues except for those identified in Brief for Defendants-Petitioners.

# TABLE OF CONTENTS

Introduction ................................................................................................................1

Petitioners Have Not Established Grounds for a Stay ...............................................2

    A.    Petitioners have not made a strong showing of likelihood of success on the merits...............................................................................................................3

    B.    Petitioners cannot establish irreparable harm. ...........................................7

    C.    Respondents would be harmed by a stay. ...................................................9

    D.    A stay would be detrimental to the public interest....................................10

Conclusion ..............................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314 (D.C. Cir. 2024) ....... 2

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014 (D.C. Cir. 2018 .................................................................................................................. 3

*Citizens for Resp. & Ethics in Washington v. U.S. Doge Serv.*, No. 25-CV-511 (CRC), 2025 WL 752367 (D.D.C. Mar. 10, 2025) ................................................ 9

*Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 554 F.3d 1046 (D.C. Cir. 2009) ................................................................. 12

*Ellsworth Assoc., Inc. v. United States*, 917 F. Supp. 841 (D.D.C. 1996) ................ 9

*Ex Parte Fahey*, 332 U.S. 258 (1943) ...................................................................... 2

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ................................................................ 3

*In re Al-Nashiri*, No. 23-1159, 2023 WL 4751640 (D.C. Cir. 2023) ........................ 3

*In re Cheney*, 544 F.3d 311 (D.C. Cir. 2008) ........................................................ 3, 4

*In re Flyers Rts. Educ. Fund, Inc.*, 61 F.4th 166 (D.C. Cir. 2023) ........................... 3

*In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1 (D.D.C. 2002) ........ 8

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) .................................................... 9

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ............... 12

*McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346 (D.C. Cir. 1995) ............ 2

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................. 1, 2, 3

*Warner Bros. Recs., Inc. v. Does 1-6*, 527 F. Supp. 2d 1 (D.D.C. 2007) .................. 9

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ................................... 7

## Treatises

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3914.23 (2d ed. 1987) ........................................................................................... 2

## INTRODUCTION

Respondents—a coalition of fourteen states—oppose Petitioners' motion for a stay pending a ruling on their petition for a writ of mandamus. On March 12, 2025, the district court granted in part and denied in part Respondents' request for limited, expedited discovery in support of their forthcoming motion for preliminary injunction. In reaching this conclusion, the court appropriately weighed the need for discovery by considering the procedural posture of the case, the limited scope of the proposed discovery, and the objections of Petitioners. The discovery order allows just five Requests for Production of Documents, six Interrogatories, and six Requests for Admissions, and the order denied Respondents' request for two depositions. The discovery order further limits these requests to Petitioners Elon Musk, the U.S. DOGE Service, and the U.S. DOGE Service Temporary Organization; Respondents are not permitted to seek discovery from President Trump.

Given the district court's narrow and well-reasoned discovery order, Petitioners cannot present any basis to justify entitlement to the extraordinary remedy of a stay. *See Nken v. Holder,* 556 U.S. 418, 428 (2009). Petitioners are not likely to succeed on the merits and will not experience irreparable harm in the absence of a stay. Moreover, granting a stay at this stage of the litigation would undermine the district court's authority to manage its docket and control the timing and scope of discovery, and it would prejudice Respondents. Accordingly,

Respondents respectfully request that this Court deny Petitioners' request for an emergency stay pending a ruling on the petition for a writ of mandamus.

### PETITIONERS HAVE NOT ESTABLISHED GROUNDS FOR A STAY

A stay is an "extraordinary" remedy. *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1327 (D.C. Cir. 2024); *Nken*, 556 U.S. at 432-33. Petitioners ask for this extraordinary remedy in the context of their petition for a writ of mandamus, itself a remedy "'reserved for really extraordinary cases.'" *Cheney v. U.S. Dist. Ct. for Dist. Of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Ex Parte Fahey*, 332 U.S. 258, 259-60 (1943)). As a general rule, discovery orders are not appealable on an interlocutory basis. *McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 353 (D.C. Cir. 1995). "Routine appeal from disputed discovery orders would disrupt the orderly progress of the litigation, swamp the courts of appeals, and substantially reduce the district court's ability to control the discovery process." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3914.23, at 123 (2d ed. 1987). Mandamus relief from a discovery order is restricted to "'only exceptional circumstances'" rising to the level of a clear abuse of discretion or "'a judicial usurpation of power.'" *Cheney*, 542 U.S. at 380 (quoting *Fahey*, 332 U.S. at 259-60). Petitioners' request for a stay should be evaluated in this context.

Petitioners have not shown they are entitled to an extraordinary stay of the district court's discovery order while they seek the further extraordinary relief of a writ of mandamus. In deciding whether to issue a stay,

> a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1017-19 (D.C. Cir. 2018) (order) (per curiam) (applying the four *Nken* factors); *see also In re Al-Nashiri*, No. 23-1159, 2023 WL 4751640, at *1 (D.C. Cir. 2023) (order) (per curiam) (citing *Nken* and determining that a mandamus petitioner failed to satisfy "the stringent requirements for a stay").

Petitioners fall short on all of the *Nken* factors.

### A. Petitioners have not made a strong showing of likelihood of success on the merits.

Petitioners have failed to establish a strong showing that the district court "clearly and indisputably" abused its discretion, as required for a writ of mandamus. *In re Flyers Rts. Educ. Fund, Inc.*, 61 F.4th 166, 167 (D.C. Cir. 2023); *In re Cheney*, 544 F.3d 311, 312-13 (D.C. Cir. 2008). Petitioners seek a writ of mandamus on the ground that the discovery order violates the principles underlying *Cheney v. U.S. District Court for D.C.*, 542 U.S. 367 (2004), because it permits inquiries that are

"highly invasive," are irrelevant to Respondents' claims, and "threaten[] the Executive's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications." Pet. at 1 (quotation marks and citation omitted). This contention is based on a mischaracterization of the scope of the discovery order and a selective reading of *Cheney*. On its face, the district court's order is narrowly tailored to elicit facts material to the resolution of Respondents' forthcoming preliminary injunction motion and avoid including material that may be protected by executive privilege.

The district court's discovery order is limited to documents and information about Petitioners DOGE entities' organizational structure and responsibilities, and any finalized plans for implementing and executing changes to federal agency operations, contracts, staffing, and expenditures. *See Addendum to Resp. to Pet.* at ADD015-016 (Discovery Order) ("Opinion"); ADD110-117 (Respondents' proposed discovery requests). This discovery directly relates to Respondents' likelihood of success on the merits in support of a preliminary injunction and the factual defense on the merits Petitioners themselves have raised—that Mr. Musk and DOGE are not directing agency decisions and actions. Contrasted with *Cheney*, this limited discovery is far narrower than what was sought there, which amounted to "all the disclosure to which [the plaintiffs] would be entitled in the event they prevail on the merits, and much more besides." *Cheney*, 542 U.S. at 388; *see In re Cheney*,

4

544 F.3d at 313-14 (distinguishing *Cheney* based on "appropriately narrow" discovery responsive to "facts [the Office of the Vice President] has itself put in evidence"). The approved discovery requests also aim to verify Petitioners' public statements and other information regarding Mr. Musk's role with respect to DOGE. *See* ADD115-117. These are matters that impose a burden no greater than what is inherent to discovery generally, and they implicate information already in the public realm.

The district court took specific measures to ensure the permitted discovery would not tread on recognized executive or deliberative process privileges. First, in adopting Respondents' proposal, the court directed that Respondents' "Discovery Requests shall not apply to President Trump." Op. at 1. Second, the court clarified that it was approving discovery requests related to "planning . . . documents" only to the extent they "do[] not encompass draft or pre-decisional materials." *See* Op. at 9-10. Third, the court excluded emails, texts, and other electronic communications from the universe of responsive materials that must be produced, *id.* at 10, as suggested by Respondents. *See* ADD115 (RFP 1-4); ADD116 (ROG 3-5); ADD117 (RFA 3-4).

Unlike the discovery requested in *Cheney*, the discovery allowed by the district court here is circumscribed and appropriate and seeks only to partially lift the veil of secrecy that has thus far shrouded the DOGE organizational structure and

the responsibilities of Petitioners Mr. Musk and DOGE, discover their finalized plans for remaking and dismantling federal agencies, and confirm what has been presented in multiple media reports – media reports based on Petitioners' own public statements. There is nothing privileged, or even confidential, implicated by these requests.

In *Cheney*, the Supreme Court emphasized that the "discovery requests [were] overbroad and '[went] well beyond" the contours of the plaintiffs' substantive legal claims pursuant to the Federal Advisory Committee Act. 542 U.S. at 383, 388. Unlike the sweeping and unfocused requests in *Cheney* asking for "everything under the sky," *id.* at 387, the discovery order here is carefully circumscribed. *See* Op. at 2, 4-10. The limited document, interrogatory, and admission requests are not only "reasonable" and "narrowly tailored" but also "necessary to resolve [Respondents'] forthcoming preliminary injunction motion."  Op. at 1, 4. Indeed, the district court undertook precisely the type of narrowing of discovery that the Supreme Court envisioned as "other avenues, short of forcing the Executive to invoke privilege." *Cheney*, 542 U.S. at 390.

Petitioners also argue that the district court should have resolved their motion to dismiss before issuing a discovery order. The court, however, waited to rule on Respondents' discovery motion until after Petitioners filed their motion to dismiss, and the court was therefore fully aware of Petitioners' arguments. The court, in fact,

specifically addressed Petitioners' jurisdictional argument relating to Article III standing. Op. at 13-14.

Because the ordered discovery is properly circumscribed and focused on the development of facts necessary to resolve Respondents' forthcoming preliminary injunction motion, Petitioners fail to meet their burden of showing a strong likelihood that the district court "clearly and indisputably" abused its discretion. Moreover, because the proposed discovery requests were narrowly crafted to avoid seeking materials protected by the deliberative process privilege or other presidential privileges, and further narrowed by the district court, Op. at 9, Petitioners will not have to undertake the line-by-line invocation of privilege that *Cheney* found to be too burdensome.

**B. Petitioners cannot establish irreparable harm.**

Petitioners also cannot demonstrate that they will suffer irreparable harm due to the discovery order. Irreparable harm must be "both certain and great[,]" and "actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Petitioners have not identified any irreparable harm caused by the discovery order from the time it was issued to when Petitioners filed their Petition and Motion to Stay six days later. Given the district court's restrictions on discovery and exclusion of privileged matters, Petitioners also cannot establish any irreparable

harm from any disclosures that might be required in the event that their request for mandamus relief has not been resolved by the production date, April 2, 2025.

Any claim that collection of non-privileged materials has presented or will present irreparable harm to Petitioners is unpersuasive. The DOGE Petitioners have existed for only two months, and much more expansive productions have been deemed reasonable and necessary under similar circumstances. *See, e.g.*, *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C. 2002). Additionally, Respondents' discovery requests exclude emails, text messages, and electronic communications, and the district court denied Respondents' requests for depositions. The limited scope of Respondents' requests and the production ordered defeat Petitioners' assertion that production would result in any harm. Keeping the discovery order in place will not subject Petitioners to any immediate irreparable harm.

Petitioners' argument that the discovery production will intrude into the confidentiality of the Office of the President is also unavailing. As an initial matter, and as described above, the discovery requests by their own terms do not implicate such confidentiality. But if a document or piece of information does implicate such concerns, Petitioners may seek *in camera* privilege review. Because privileges of the Office of the President are not unlimited, the district court can conduct the applicable balancing of relevance and need against non-disclosure principles. *See, e.g.*, *In re*

8

*Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997) (determining that presidential communications privilege "should not extend to staff outside the White House in executive branch agencies," and "should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President"); *Citizens for Resp. & Ethics in Washington v. U.S. Doge Serv.*, No. 25-CV-511 (CRC), 2025 WL 752367, at *11 (D.D.C. Mar. 10, 2025) (holding that FOIA applies to DOGE because the defendants "exercise substantial independent authority").

Because Petitioners have not and cannot establish any irreparable harm, this key *Nken* factor weighs heavily against the issuance of a stay.

### C. Respondents would be harmed by a stay.

Unlike the hypothetical harms claimed by Petitioners, Respondents will suffer substantial harm and prejudice if this Court issues a stay. The purpose of Respondents' discovery requests is to collect information relevant to their forthcoming preliminary injunction motion, a purpose that has been repeatedly recognized as legitimate. *See Ellsworth Assoc., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings."); *see also Warner Bros. Recs., Inc. v. Does 1-6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007). A stay that allows Petitioners to continue making and executing

9

directives of major significance, while simultaneously stalling Respondents' ability to pursue a preliminary injunction, would inflict unjustifiable, irreparable harm to Respondents.

Because Petitioners alone possess the relevant information, discovery is necessary to determine the full extent to which their conduct has harmed and will continue to harm Respondents' interests. Thus, any delay in Petitioners' transmission of responsive discovery materials will also necessarily delay Respondents' ability to abate further harm through a preliminary injunction.

For these reasons, the third *Nken* factor also weighs against a stay.

**D. A stay would be detrimental to the public interest.**

Petitioners invoke the doctrine of separation of powers as a shield against discovery, even though the discovery sought is directly related to Petitioners' violation of these very principles. Respondents have alleged that Mr. Musk, an unappointed, unconfirmed special government employee, leads a government entity that is wielding unprecedented and extraordinary power beyond any constitutional or statutory authority. The limited discovery order serves to help the district court assess, at the preliminary injunction stage, whether Respondents are likely to succeed on the merits of their claims. As such, the ordered discovery is in furtherance of protecting the very same structural constitutional issues that Petitioners themselves recognize as being matters of public interest.

10

The challenged discovery requests revolve around questions about the authority exercised by Petitioners Mr. Musk and the DOGE entities with respect to specific federal agencies, the impact of their official conduct on these agencies, and the nature of any oversight of their work. Within the context of Respondents' allegations, the production of responsive material or information will further the public interest by shedding light on whether and how unelected government actors are undertaking actions that are drastically altering how the federal and state governments provide services to and exercise governance over constituents.

The lack of Petitioners' accountability and transparency is evident in, among other things, the conflicting and rapidly shifting positions they and their counsel have taken about the role Mr. Musk and the DOGE entities play in the federal government. For instance, despite President Trump's and Mr. Musk's repeated public statements describing Mr. Musk as "leading" the DOGE entities and their work, Petitioners have, throughout this litigation, taken the position that Mr. Musk is not in charge of the entity. *See* ADD094-095 (Decl. of Joshua Fisher) at ¶ 6. Further, even *after* these representations were made, President Trump and Mr. Musk have continued to attribute responsibility for the DOGE Petitioners' work to Mr. Musk. *See* ADD137 (statement by the President to joint session of Congress that DOGE "is headed by Elon Musk"), *and* ADD050-061, Compl. ¶¶ 98-100, 146, 156 (Mr. Musk boasting of "shutting" USAID, that he would dismantle CFPB, and that he had

11

"deleted" a GSA technology group). Petitioners' counsel filed a Notice and Declaration in this litigation stating, "Neither of the President's Executive Orders regarding 'DOGE' contemplate—much less furnish—[] authority" to "order personnel actions at any of the agencies" identified in Respondents' proposed temporary restraining order. ADD091-092. However, as the district court pointed out, the plain text of Executive Order 14,210 states that "'new career appointment hiring decisions' at each federal agency 'shall be made in consultation with the agency's DOGE Team Lead' and agencies 'shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled.'" ADD018 (quoting Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025)). Because the ordered discovery focuses on evidence to resolve these inconsistencies, permitting discovery to go forward for purposes of the preliminary injunction furthers the public's interest in having accountability for, and transparency around, governmental decisionmaking. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (internal quotation omitted)); *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1051 (D.C. Cir. 2009) (referencing the public interest in "public understanding of the operations or activities in government"). In contrast,

granting Petitioners a stay would shield their actions from the most basic scrutiny, setting a troubling precedent—one that undermines the rule of law and the public's interest in knowing whether those in power have acted within their lawful authority.

Finally, a stay would also likely delay the filing and resolution of Respondents' motion for preliminary injunction. Petitioners' activities have caused grave concern to federal workers, federal contractors, lessors to the federal government, and ordinary citizens. Allowing the current uncertainty as to the legality of Petitioners' actions to linger unnecessarily is contrary to the public interest, with no offsetting public benefit.

Therefore, the public interest weighs strongly in favor of denial of the motion for stay.

## CONCLUSION

All four *Nken* factors weigh against the issuance of a stay because (1) Petitioners cannot establish their likelihood of success on the merits; (2) Petitioners have not presented any legitimate risk of irreparable harm; (3) Respondents will be harmed by issuance of a stay; and (4) the public interest does not favor a stay.

Accordingly, Respondents respectfully request that this court deny the Emergency Motion for Stay Pending a Ruling on the Government's Petition for a Writ of Mandamus and an Immediate Administrative Stay in its entirety, and for any such further relief this Court deems just and proper.

13

Respectfully submitted,

**RAÚL TORREZ**
Attorney General of the State of New Mexico

*/s/ Steven Perfrement*
Steven Perfrement

New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM  87501
(505) 270-4332
sperfrement@nmdoj.gov
*Attorneys for the State of New Mexico*

14

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing response complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the response contains 2,976 words. The motion complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word in proportionally spaced 14-point Times New Roman typeface.

*/s/ Steven Perfrement*
Steven Perfrement

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2025, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit through the appellate CM/ECF system. I further certify that the response has been served on all counsel of record via e-mail on March 24, 2025.

<u>*s/ Steven Perfrement*</u>
Steven Perfrement