No. 25-5072

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

In re U.S. DOGE Service, et al.,

Petitioners.

———————————

On Petition for a Writ of Mandamus to the United States
District Court for the District of Columbia

———————————

## MOTION TO GOVERN FURTHER PROCEEDINGS

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant
  Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney
  General*

MARK R. FREEMAN
JOSHUA DOS SANTOS
  *Attorneys, Appellate Staff
  Civil Division, Room 7224
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 353-0213*

Petitioners file this motion to govern further proceedings in response to the Court's May 29, 2025 order.  As the federal government has explained, the district court's overbroad and highly intrusive discovery order, which requires the government to produce detailed information regarding the substance of the advice communicated by the President's advisors within the Executive Branch and the process through which that advice was formulated, violates the separation of powers.  Pet. 1-4.  This Court granted the government's emergency motion to stay that discovery order pending resolution of the government's mandamus petition, and the Court requested to be notified of the district court's resolution of the government's then-pending motion to dismiss the case.  The district court subsequently denied the government's motion to dismiss, and this Court asked the government to submit this motion to govern further proceedings.

Since then, plaintiffs have moved to vacate the expedited discovery order that is the subject of these mandamus proceedings on the ground that they no longer intend to seek the preliminary injunction on which their request for expedited discovery was premised. The district court has issued an indicative ruling stating that it would

vacate the discovery order if this Court lifted its stay. Nonetheless, plaintiffs' motion to vacate the expedited discovery order makes clear that the motion is "without prejudice to their right to take merits discovery" in the near future. Dkt. No. 101, at 1-2. Plaintiffs have also expressly refused to disavow seeking a discovery order, potentially soon, that is equivalent or substantially similar to the discovery order that is at issue in these mandamus proceedings. And indeed, in a case consolidated with this one, a group of plaintiffs who have brought similar claims have already filed a motion for discovery that incorporates the same discovery requests at issue here. *See Japanese American Citizens League v. Musk*, 1:25-cv-00643-TSC (D.D.C.), ECF No. 11-1 at 8-9.

Because plaintiffs have given every indication that the same discovery dispute is likely to arise again in short order, a continuing controversy exists over the propriety of the district court's discovery order. The Court should therefore grant the government's mandamus petition to quash the March 12 discovery order and direct the district court not to order any equivalent or similar discovery in this case. In so doing, the Court should provide guidance to the district court regarding

the propriety and scope of any future discovery in this matter. *See* Pet. 1-4, 12-17.

The Supreme Court recently confirmed applicable separation-of-powers principles in staying a similarly overbroad discovery order against U.S. DOGE Service (USDS). *See USDS v. Crew*, No. 24-1246, 2025 WL 1602338, at *1 (U.S. June 6, 2025). Those principles require discovery against White House advisors and presidential advisory bodies like USDS to be as narrowly tailored as possible and a last resort ordered only after alternative ways to decide the case have been exhausted. *See* Pet. 12-17. And those principles apply with particular force here, where plaintiffs' claims can and should be decided without any discovery at all. Providing guidance to the district court would conserve judicial resources and likely avoid another round of emergency mandamus proceedings before this Court on the same issues.

## STATEMENT

This matter arises from the district court's March 12, 2025 discovery order compelling wide-ranging and expedited discovery against a senior White House advisor and USDS, a presidential advisory body within the Executive Office of the President. *See* Pet. 1-

3

4.  Plaintiffs allege that Elon Musk violated the Appointments Clause by exercising authority without proper appointment to an office of the United States, and that Mr. Musk, USDS, and the USDS temporary organization have acted *ultra vires*.  Dkt. No. 2, at 56-58.

Plaintiffs moved for expedited discovery to support a forthcoming preliminary injunction and made broad discovery requests regarding vast swathes of USDS's activities since its creation.  The requests included production of documents and detailed information about USDS personnel and who hired them; documents about "planning" on topics including data access, cancellation of federal contracts or agreements, and employment decisions at federal agencies; various categories of internal communications and documents that USDS or Mr. Musk "created, compiled, or edited" on those topics and others; and agreements between USDS and "any federal agency."  Dkt. No. 45-1, at 5-7.  The requests also sought disclosure of "all federal agencies for which DOGE personnel" "directed" or "plan[ned]" to direct certain actions regarding contracts or employment, as well as details about actions that those agencies subsequently took.  *Id.* at 6.  And plaintiffs

stated that these requests were "continuing in nature" and required "supplemental answers." *Id.* at 3.

The district court granted plaintiffs' discovery motion nearly in full, and did so before deciding the government's pending motion to dismiss on threshold grounds. *See* Pet. 4-11. Shortly after, the federal government filed a petition for mandamus and an emergency motion for a stay of that discovery order, arguing that the overbroad discovery order violated the separation of powers for multiple reasons. *See* Pet. 1-4, 11-36; Stay Mot. 1-3.

This Court granted a stay of that discovery order "pending further order of this court." Order (March 26, 2025). The Court emphasized that "petitioners have shown a likelihood of success on their argument that the district court was required to decide their motion to dismiss before allowing discovery." *Id.* And the Court directed the parties "to promptly notify this court upon the district court's disposition of petitioners' motion to dismiss." *Id.*

On May 27, 2025, the district court denied the government's motion to dismiss the case based on the theory that presidential advisors' influence can be so great as to render them *de facto* officers

who must be appointed in accordance with the Appointments Clause and to render agency action taken in accordance with the advisors' instructions *ultra vires. See* Dkt. No. 93, at 25-41. The parties notified this Court of the district court's decision, and this Court ordered the federal government to file a motion to govern further proceedings.

On June 6, 2025, before the federal government had filed a motion to govern further proceedings in these mandamus proceedings, plaintiffs filed a motion asking the district court to "vacate the Order allowing limited expedited discovery" and stating that plaintiffs "will not be filing a motion for preliminary injunction." Dkt. No. 101, at 1. But plaintiffs specified that they made "this request without prejudice to their right to take merits discovery in the ordinary course pursuant to the Federal Rules of Civil Procedure." *Id.* at 1-2.

Shortly afterward, federal government counsel asked plaintiffs if they would agree not to seek the same or equivalent discovery in this case. Plaintiffs responded: "For a number of reasons, we cannot agree to foreclose discovery on topics that might overlap with those covered by the expedited discovery requests and that would be permissible under

the federal rules.  If we pursue merits discovery, it will be tailored to
the factual and legal landscape as it exists when drafted."

The district court determined that it could not grant plaintiffs'
motion to vacate "[u]ntil the Circuit lifts the stay of the March 12
Discovery Order," but issued an indicative ruling stating that "it would
grant Plaintiffs' motion to vacate if the Circuit lifts the stay and
remands for that purpose."  Dkt. No. 103, at 2-3.

## ARGUMENT

The Court should grant the government's mandamus petition,
order the district court to vacate its March 12 discovery order, and
provide guidance directing the district court not to order any equivalent
or similar discovery against White House advisors and USDS in this
case.

1.    A live controversy remains between the parties on the
propriety of the district court's discovery order.  Although plaintiffs
have voluntarily moved to vacate the expedited discovery order that
was predicated on a motion for a preliminary injunction, plaintiffs state
that they are dropping discovery now "without prejudice" to "tak[ing]
merits discovery in the ordinary course."  Dkt. No. 101, at 1-2.  They

have also expressly refused to disavow seeking discovery on the very same subjects—raising the very same separation of powers issues—later in this case. And notably, a group of plaintiffs bringing similar claims in a case consolidated with this one have already filed a discovery motion that incorporates the same discovery requests that are at issue in these mandamus proceedings. *See Japanese American Citizens League v. Musk*, 1:25-cv-00643-TSC (D.D.C.), ECF No. 11-1 at 8-9.

Since plaintiffs have made it clear that the issues pending in these mandamus proceedings are likely to recur, "there is not the slightest doubt that there continues to exist between the parties that concrete adverseness which sharpens the presentation of issues." *Chafin v. Chafin*, 568 U.S. 165, 173 (2013). And this is not a situation in which "it is impossible for" the Court "to grant any effectual relief whatever." *Id.* at 172 (quoting *Knox v. Service Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). The Court can and should quash the March 12 order, direct the district court not to order any equivalent discovery, and provide guidance regarding the separation-of-powers principles that should shape consideration of any future discovery against

8

presidential advisors in this case.

The voluntary cessation doctrine removes any doubt that a live controversy exists. Plaintiffs cannot voluntarily cease a challenged action to have litigation over the legality of that action "declared moot, then pick up where [they] left off." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Instead, a litigant "claiming that its voluntary compliance moots" an issue "bears the formidable burden of showing that it is absolutely clear" that the issue "could not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 190 (2000)).

Far from doing so, plaintiffs here effectively admit that they plan to seek the same discovery into the same matters going forward. Failing to decide live issues under such circumstances would only encourage gamesmanship. *See Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (The voluntary cessation doctrine is based on "concerns that a party may be manipulating the judicial process through the false pretense of singlehandedly ending a dispute") (quotation marks omitted). Both established mootness principles and

9

conservation of this Court's resources thus weigh heavily in favor of this Court providing guidance to the district court.

2.    Because discovery implicating the separation of powers remains at issue, the Court should grant the government's mandamus petition to quash the March 12 order and thereby provide the district court with instructions regarding how to approach discovery requests in this case going forward.

In doing so, the Court should follow the Supreme Court's approach in another mandamus proceeding regarding discovery against USDS. *See USDS v. CREW*, No. 24-1246, 2025 WL 1602338, at *1 (U.S. June 6, 2025). There, the district court ordered discovery in a Freedom of Information Act (FOIA) suit against USDS along similar lines to that ordered here, including by ordering disclosure of USDS's directives, personnel information, data access plans, and more. *See* Application to Stay at 1-4, 6-10, *USDS v. CREW*, No. 24A1122 (May 21, 2025). The district court in that case had justified that discovery on the theory that USDS's influence over federal agencies could render USDS an "agency" subject to FOIA. *Id.* at 2-3. After the D.C. Circuit denied mandamus and a stay of the discovery, the Supreme Court granted a stay, granted

certiorari of the denial of mandamus, and vacated and remanded with guidance for further proceedings. *USDS*, 2025 WL 1602338, at *1.

The Supreme Court provided three guiding principles for proceedings on remand. As a general matter, citing *Cheney v. United States District Court*, 542 U.S. 367 (2004), the Court explained that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." *USDS*, 2025 WL 1602338, at *1. The Court also provided guidance on the kinds of information relevant to the legal question at issue, instructing that "[a]ny inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade." *Id.* And regarding tailoring, the Court explained that "requir[ing] the Government to disclose the content of intra-Executive Branch USDS recommendations and whether those recommendations were followed is not appropriately tailored." *Id.*

This Court should make clear that the district court's approach to discovery in this case flouts the principles that the Supreme Court recognized in *CREW* and *Cheney*. As in *CREW*, the district court failed to apply *Cheney*'s instructions, impermissibly trained discovery on the

11

extent of advisors' *de facto* influence, and issued a grievously overbroad order intruding on the internal workings of the President's advisors.

First, the district court contravened *Cheney*'s principles. The district court incorrectly concluded that separation-of-powers principles do not bear on discovery in this case and that the government's ability to invoke privilege would remedy any burden. *See* Pet. 12-21; Op. 9-11. "[J]udicial deference and restraint" counsel that discovery against White House advisors and USDS must be as narrowly tailored as possible and permitted only a last resort under *Cheney*. *See USDS*, 2025 WL 1602338, at *1; *see also* Pet. 1-4, 11-17. And the need to assert privileges is a burden to be avoided because of separation-of-powers concerns. *See* Pet. 17-19; *Cheney*, 542 U.S. at 387-89 (finding "no support for the proposition that the Executive Branch shall bear the burden of invoking executive privilege with sufficient specificity and of making particularized objections").

The district court also violated *Cheney*'s principles by failing to consider all narrower alternatives to discovery against the President's advisors. As *Cheney* recognized, those alternatives include prioritizing the resolution of threshold legal questions and considering potential

certification of those questions for appeal.  *See* Pet. 31; *Cheney*, 542 U.S. at 391-92 (encouraging courts to "be sensitive to requests by the Government for interlocutory appeals" that could dispose of the case without discovery).

The district court likewise contravened *Cheney* by granting discovery of information that plaintiffs seek as their ultimate relief "in the event they prevail on the merits." *Cheney*, 542 U.S. at 388 (discovery order was inappropriate partly because it gave the plaintiffs disclosures "to which they would be entitled" if they won their case).  In particular, the district court granted discovery requesting information about the use of information accessed at agencies, Dkt. No. 45-1, at 5-6, even though that includes information that plaintiffs' complaint sought as relief if plaintiffs prevail on the merits, *see* Pet. 32; Dkt. No. 2, at 58 (prayer for relief seeking information regarding data use).

Second, the district court improperly focused discovery on the extent of *de facto* influence held by the President's advisors.  *See* Pet. 23-30.  Just as the Supreme Court made clear that "[a]ny inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade," *USDS*,

2025 WL 1602338, at *1, this Court should clarify that any inquiry into whether a person acts *ultra vires* or holds an office established under law for purposes of the Appointments Clause cannot turn on that person's mere ability to persuade. As the government's petition explains, the Appointments Clause concerns whether a person formally holds an office established by law without proper appointment, and *ultra vires* claims turn on whether agency actions exceed authority. *See* Pet. 22-28. The district court's unprecedented investigation into the influence that the President's advisors exercise violates the separation of powers and would mire every presidential administration in Appointments Clause and *ultra vires* suits against advisors. *See id.*

In its denial of the government's motion to dismiss, the district court doubled down on its erroneous view of the scope of the Appointments Clause and *ultra vires* inquiries, making it exceedingly likely that the district court will again order discovery focused on the influence of presidential advisors. The district court appeared to accept the government's explanation that Mr. Musk has not held any office established by Congress. *See* Dkt. No. 93, at 28-30. Nonetheless, the court read plaintiffs' complaint to show that Mr. Musk has occupied a

14

*de facto* office without proper appointment based on allegations that he has "influence[d] the operations of at least 17 agencies." *Id.* at 28. The court concluded that the degree of alleged influence is so great as to show that the President created an office of the United States "by Executive Order" and without proper appointment, and therefore that Mr. Musk's alleged exercise of influence to "direct[] … DOGE personnel" violates the Appointments Clause. *Id.* at 22, 29-30. Based on the same reasoning, the court concluded that plaintiffs have alleged "a claim for *ultra vires* conduct." *Id.* at 34-41.

As the government has explained, however, neither the Appointments Clause nor plaintiffs' *ultra vires* claim turn on whether the President's advisors have so much influence that they amount to *de facto* decisionmakers. *See* Pet. 22-28; Pet. Reply 9-13. The district court's contrary theory would lead to litigation raising grave separation-of-powers concerns. "[S]enior White House officials close to the President[] often give ad hoc directions to executive branch personnel," but "it is assumed that they merely are passing on the President's wishes." *Meyer v. Bush*, 981 F.2d 1288, 1293-94 (D.C. Cir. 1993) (emphasis omitted). Yet under the district court's view, allegations of

15

such ad-hoc, informal influence would allow litigants to inundate presidential advisors and White House personnel in every administration—from the Chief of Staff to the White House Counsel—with Appointments Clause and *ultra vires* suits, along with corresponding discovery requests to assess whether they ever effectively "direct" the actions of agency officeholders.

This Court and the Supreme Court have in other contexts rejected such unwieldly theories of *de facto* government offices based on influence—both times in cases where plaintiffs used similar theories to attempt intrusive discovery against presidential advisors in violation of the separation of powers. As noted, the Supreme Court recently rejected that approach to determining whether USDS qualifies as an "agency" under FOIA. *See USDS*, 2025 WL 1602338, at *1. And this Court's decision in *Cheney* rejected the same reasoning under the Federal Advisory Committees Act (FACA). There, the district court had ordered discovery on the theory that private persons could be so influential as to become *de facto* members of a presidential advisory committee, thereby triggering FACA disclosures. *See Cheney*, 542 U.S. at 373-76. After the Supreme Court reversed this Court's denial of

16

mandamus and encouraged this Court to decide the merits of plaintiffs'

"*de facto* membership doctrine," *id.* at 392, this Court rejected the *de*

*facto* membership theory, *In re Cheney*, 406 F.3d 723, 728 (D.C. Cir.

2005).  The Court emphasized "the severe separation-of-powers

problems" that would arise from allowing FACA suits "on the basis that

private parties participated in, or influenced … a committee in the

Executive Office of the President." *Id.*  The consequences of the district

court's order here are in many respects worse.

     The district court was thus clearly mistaken in allowing plaintiffs

to conduct a sweeping investigation into Mr. Musk and USDS's

influence regarding a range of agency actions.  Notably, the district

court itself appeared to recognize that plaintiffs' Appointments Clause

claim might fail if the relevant agency actions were taken by an officer

who possessed the statutory authority to take that action. *See* Dkt. No.

93, at 33-34 (acknowledging that this Court rejected an Appointments

Clause challenge when "a duly appointed official ratified the contested

actions" in *Andrade v. Regnery*, 824 F.2d 1253 (D.C. Cir. 1987)); Pet. 25-

27 (discussing *Andrade*).  And plaintiffs' *ultra vires* claim would

17

likewise fail if the relevant actions were taken by a government actor with the requisite statutory authority. Pet. 27-28.

Plaintiffs here, however, have not alleged that any actions were formally taken by persons who were not properly appointed officeholders. *See* Pet. 24-25, 28. Nor have they brought claims against agencies for agency actions that allegedly harmed them. *See* Dkt. No. 93, at 37 (noting that plaintiffs "are not challenging agency action"). And even if they had, the inquiry would at most extend to whether any particular agency actions that plaintiffs have standing to challenge were formally taken by a government official who possessed the requisite authority.

Third, the discovery order's egregious overbreadth is fundamentally inconsistent with the restraint owed in cases involving the President's advisors. *See* Pet. 33-37. Just as the Supreme Court explained that requests for information regarding USDS's recommendations were inappropriate in *CREW*, the Court should make clear that intrusive discovery with a tenuous or no connection to the merits questions at issue are impermissible under *Cheney*, and

18

especially so when they implicate "internal Executive Branch communications." *USDS*, 2025 WL 1602338, at *1.

The discovery order's impropriety and overbreadth are especially clear with respect to sweeping requests regarding USDS's "documents," "memoranda," and "planning" on a slew of topics such as data access, cancellation of federal contracts, and employment decisions at federal agencies; internal communications and documents that USDS or Mr. Musk "created, compiled, or edited" on such topics; and information about actions that USDS or Mr. Musk "directed" or "plan[ned]" to direct federal agencies to take regarding contracts or employment. Dkt. No. 45-1, at 5-7; Pet. Reply 14-17 (describing the requests in detail). As the government explained, these requests and others are not only extraordinarily invasive and burdensome because they target the core of USDS's advisory functions since its creation, but they are in no way necessary to decide plaintiffs' claims in this case. *See* Pet. 33-36; Pet. Reply 14-17.

* * *

In sum, the district court erroneously declined to apply *Cheney*'s principles to discovery that clearly implicates the separation of powers,

19

impermissibly focused discovery on the influence of presidential advisors, and ordered dragnet discovery into some of the most sensitive advisory communications within the Executive Branch. That kind of intrusion into the heartland of the advice and function of a White House advisor and a presidential advisory body is fundamentally inconsistent with the "special considerations" due in a case involving the President's advisors and will inevitably lead to privilege disputes that risk "constitutional confrontation." *Cheney*, 542 U.S. at 385, 389-90 (quoting *United States v. Nixon*, 418 U.S. 683, 692 (1974)). Absent this Court's guidance, this affront to the separation of powers is likely to recur. This Court should make clear that it must not be repeated.

## CONCLUSION

The Court should grant the government's mandamus petition to quash the March 12 discovery order and direct the district court not to order any equivalent or similar discovery order in this case.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant*
  *Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney*
  *General*

MARK R. FREEMAN

  *s/ Joshua Dos Santos*
JOSHUA DOS SANTOS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7224*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*
  *joshua.y.dos.santos@usdoj.gov*

JUNE 2025

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify this motion complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Century, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,736 words, according to the count of Microsoft Word.

s/ *Joshua Dos Santos*

JOSHUA DOS SANTOS

## CERTIFICATE OF SERVICE

I certify that on June 16, 2025, I filed and served the foregoing with the Clerk of the Court by causing a copy to be electronically filed via the appellate ACMS system.  I also hereby certify that the participants in the case are registered ACMS users and will be served via the ACMS system.

s/ *Joshua Dos Santos*
JOSHUA DOS SANTOS