No. 25-5072

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

In re U.S. DOGE Service, et al.,

Petitioners.

On Petition for a Writ of Mandamus to the United States
District Court for the District of Columbia

REPLY IN SUPPORT OF
MOTION TO GOVERN FURTHER PROCEEDINGS

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant
  Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney
  General*

MARK R. FREEMAN
JOSHUA DOS SANTOS
  *Attorneys, Appellate Staff
  Civil Division, Room 7224
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 353-0213*

Plaintiffs precipitated this emergency mandamus litigation by seeking intrusive discovery against a presidential advisor and a presidential advisory body, the U.S. DOGE Service (USDS), to support a preliminary injunction motion. This Court granted a stay because of the discovery order's separation-of-powers violations. Now, plaintiffs say they can moot these mandamus proceedings, avoid this Court's decision, and preserve their intrusive discovery demands for future litigation merely by dropping their preliminary injunction motion and moving on to discovery "in the ordinary course." Response 9.

Plaintiffs' arguments lack merit and would only encourage gamesmanship, resulting in repeated emergency litigation that would burden this Court and the government alike. The district court's discovery order remains live; plaintiffs defend its lawfulness; and plaintiffs say they can seek the same discovery as the "next step" in this litigation. *See* Response 10, 17. Under ordinary voluntary-cessation principles, the government's mandamus petition is not moot.

The Court should accordingly grant the government's petition, quash the discovery order, and thereby provide guidance for future proceedings. Like the district court in *USDS v. CREW*, No. 24-1246,

2025 WL 1602338, at *1 (U.S. June 6, 2025), the district court here failed to apply applicable principles of deference and restraint under *Cheney v. United States District Court*, 542 U.S. 367 (2004); inappropriately focused on the extent of presidential advisors' *de facto* influence, rather than official authority; and approved patently overbroad discovery into presidential advisors' activities.

## ARGUMENT

1. Plaintiffs' argument that the mandamus petition is "moot" fails. Response 8. The discovery order remains live, and plaintiffs continue to defend its scope. Response 22-27. Even if the district court grants plaintiffs' motion to vacate the existing discovery order, plaintiffs maintain that they can make the same discovery requests as the "next step" in this case. Response 17; *see id.* at 10. Moreover, plaintiffs acknowledge that forthcoming discovery will implicate the same separation-of-powers questions at issue here. *See* Response 19. Plaintiffs even appear to admit that the dispute may lead to renewed emergency mandamus proceedings in short order. *See* Response 23.

Those circumstances plainly present a live controversy. Plaintiffs' mootness theory would only encourage gamesmanship and repetitive

2

emergency litigation that pointlessly burdens this Court and the government alike. Litigants should not be allowed to say they will drop discovery requests after the Court has granted a stay, while at the same time promising to restart the discovery dispute the moment litigation resumes. *Cf. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (explaining that an issue is not moot when a pause in challenged conduct "by its terms [is] not permanent").

Plaintiffs assert that only a "mere possibility" exists that this discovery dispute will recur because the scope of future discovery is "unclear." Response 9, 16; *see id.* at 14-15. But plaintiffs continue to defend the existing discovery order's scope, and have not narrowed their claims. *See* Response 22-27. Indeed, plaintiffs expressly told counsel that they "cannot agree to foreclose discovery on topics that might overlap with those covered by the expedited discovery requests." Response 10. And the district court's denial of the government's motion to dismiss accepted the mistaken merits theory that precipitated the broad discovery order at issue here—namely, the theory that plaintiffs' claims can turn on presidential advisors' influence. *See* Response 24-25. There is accordingly little reason to doubt that the same

3

fundamental objections that brought the government to this Court on a mandamus petition will recur in short order.

Plaintiffs argue that some arguments in the government's mandamus petition—specifically, that the district court improperly ordered discovery before deciding the government's motion to dismiss—no longer apply. Response 14. But as the government has explained, the discovery order is unlawful for numerous other reasons. *See* Mot. 10-20. And plaintiffs fare no better by noting that the discovery order was tied to a preliminary injunction motion that they will no longer file. Response 13. Plaintiffs never explain why discovery would necessarily be different at the merits stage, and do not identify a single discovery request that they would give up.[1]

Plaintiffs assert that the voluntary cessation doctrine somehow does not apply to mandamus petitions. Response 27-28. Plaintiffs cite no authority for that proposition, which contravenes textbook mootness law. A mandamus petition is "an original action … pursuant to the All Writs Act." *Cole v. U.S. District Ct.*, 366 F.3d 813, 816 (9th Cir. 2004).

---

[1] Plaintiffs note that Elon Musk has stepped down from his role in the White House, Response 10, but do not argue that this development moots discovery involving Mr. Musk or USDS.

4

And the voluntary cessation principle is a general mootness doctrine concerning the circumstances in which a litigant's unilateral conduct moots a controversy. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Because plaintiffs argue that this mandamus action is moot based on plaintiffs' voluntary conduct, plaintiffs must demonstrate "that it is absolutely clear" that the controversy "could not reasonably be expected to recur." *Id.*

Plaintiffs mistakenly argue (Response 8, 11-13, 15-17, 20) that the government now lacks a clear right to mandamus relief. In doing so, plaintiffs rely on cases where litigants sought recusal of district court judges based on possible conflicts that "may never [have] materialize[d]." *See In re Moore*, 955 F.3d 384, 386 (4th Cir. 2020); *In re Vazquez-Botet*, 464 F.3d 54, 57 (1st Cir. 2006). Unlike those hypothetical recusal disputes, however, the discovery dispute here has already materialized. The government asks this Court to quash the currently pending discovery order, and in so doing provide guidance to the district court. More broadly, as the government has explained, the government has a clear and indisputable right to quash discovery that violates the separation of powers. *See, e.g.*, Pet. 1-4, 12.

5

Plaintiffs assert that the government now has other avenues for relief because the government can fight discovery anew at the merits stage, including by seeking emergency mandamus relief again. *See* Response 17-20, 23. That argument directly undermines plaintiffs' mootness argument and misapprehends the relevant question. As this Court has already recognized in granting a stay, mandamus is the only relief available for the discovery order at issue. *See* Pet. 12. The question is whether this mandamus action has been rendered moot by plaintiffs' unilateral, voluntary, and expressly temporary change of heart, even as the same discovery is likely to recur in short order. And plaintiffs' statement that future proceedings may include renewed mandamus proceedings indirectly acknowledges that mandamus is the appropriate remedy for this continuing dispute. *See* Response 23.

2. Plaintiffs' defense of the discovery order at issue here likewise lacks merit. As the government has explained, this Court should correct three categories of errors that are likely to recur: the discovery order contravenes separation-of-powers principles under *Cheney v. United States District Court*, 542 U.S. 367 (2004); the order improperly requires disclosures to assess presidential advisors' informal

6

influence, rather than their official authority; and the order impermissibly burdens presidential advisors with overbroad discovery requests. Those are the same kinds of errors that the Supreme Court recently addressed with respect to a similar discovery order against USDS. *See USDS v. CREW*, No. 24-1246, 2025 WL 1602338, at *1 (U.S. June 6, 2025).

    a.    Plaintiffs never address the numerous ways in which the discovery order contravened *Cheney*'s principles. The district court applied a garden-variety reasonableness inquiry rather than *Cheney*'s guideposts, ignored the burdens of raising privileges that risk constitutional confrontation, asserted that discovery against USDS is not subject to separation-of-powers considerations, and ordered discovery that overlapped with information that plaintiffs sought as their ultimate relief. Mot. 12-13; Pet. 13-18. Plaintiffs say that plaintiffs and the district court can apply *Cheney*'s principles on their own. Response 19. But plaintiffs continue to deny the district court's clear errors, *see* Response 22-27, so the Court's guidance clearly remains necessary.

7

b.    Plaintiffs similarly fail in their attempt to avoid this Court's guidance on the correct scope of discovery.  Just as the Supreme Court rejected an influence-based theory of agency status under the Freedom of Information Act (FOIA) in *CREW*, this Court should reject plaintiffs' influence-based theory of Appointments Clause and *ultra vires* claims.  *See CREW*, 2025 WL 1602338, at *1.  Otherwise, the district court is likely to re-issue discovery that improperly investigates the influence of presidential advisors.

Plaintiffs assert that their theory is based on "authority," not influence.  Response 24-25.  But plaintiffs' argument rests on the contention that the *degree* of influence can amount to official authority.  Plaintiffs contend that Mr. Musk "assert[ed] officer-level authority," despite not formally holding an office, because Mr. Musk effectively "direct[ed] or compel[led] agency action," and plaintiffs similarly argue that USDS has acted *ultra vires* by effectively "direct[ing]" agency actions.  Dkt. No. 51, at 8.  The district court accepted that theory in granting discovery, and did so again in denying the government's motion to dismiss, making it all the likelier that it will again order

8

discovery to assess whether advisors' influence amounted to *de facto* authority. *See* Dkt. No. 41, at 24- 32; Mot. 14-15.

Such inquiries into presidential advisors' pragmatic influence violate the separation of powers and have nothing to do with the Appointments Clause or *ultra vires* claims. *See* Mot. 13-17; Pet. 22-28. In any administration, it is commonplace that, for example, the President's chief of staff or other senior White House advisors may wield tremendous policy influence, even though they lack formal governmental power. The influence enjoyed by such advisors comes from the perception that they have the President's ear and know his wishes. For similar reasons, agency officials may think twice before disregarding the wishes of particularly influential members of Congress or media personalities. *Cf. Percoco v. United States*, 598 U.S. 319, 330 (2023) ("From time immemorial, there have been … individuals who lacked any formal government position but nevertheless exercised very strong influence over government decisions").

Neither Appointments Clause nor *ultra vires* claims turn on some ad hoc assessment of such informal influence. The Appointments Clause concerns only whether persons who hold an office established by

9

law were properly appointed; the *ultra vires* doctrine turns on whether a challenged government action exceeded a governmental actor's authority. *See* Pet. 26-29. If properly appointed officeholders with requisite authority take an action, they have not violated the Appointments Clause or acted *ultra vires* merely because the officeholders did what an influential presidential advisor wished. This Court's precedents have made that principle clear. *See* Pet. 26-28. To the extent that plaintiffs wish to challenge specific agency actions on the ground that they were *not* formally taken by lawfully appointed officeholders (challenges they have not brought here, *see* Dkt. No. 93, at 37), plaintiffs are free to challenge those specific actions by bringing suit against the relevant agencies.

Plaintiffs also have no adequate answer to decisions rejecting influence-based theories of *de facto* authority in other contexts. Mot. 16-17. Plaintiffs do not address this Court's en banc decision rejecting a theory that persons could become *de facto* committee members under the Federal Advisory Committees Act merely based on influence. *See In re Cheney*, 406 F.3d 723, 728 (D.C. Cir. 2005). As to the Supreme Court's decision in *CREW*, which rejected the view that USDS could

10

become an "agency" under FOIA based on its influence, plaintiffs merely observe that this case does not arise under FOIA. Response 22-23; see *USDS*, 2025 WL 1602338, at *1. But plaintiffs ignore that both decisions rejected theories that *de facto* influence can confer formal legal authority or status as an official government actor. And just last week, the Supreme Court once again rejected a similar theory that alleged practical influence can amount to formal government authority, this time under the private nondelegation doctrine. See *FCC v. Consumers' Research*, No. 24-354, 2025 WL 1773630, at *18 (U.S. June 27, 2025) (rejecting such a theory because "[i]t is sufficient in such schemes that the private party's recommendations … cannot go into effect without an agency's say-so").

The Court should accordingly make clear that the district court erred by ordering discovery on the theory that presidential advisors' *de facto* influence over agency action can amount to an Appointments Clause or *ultra vires* violation. Under plaintiffs' and the district court's contrary theory, White House advisors in every presidential administration would face ceaseless Appointments Clause and *ultra vires* claims alleging that they improperly directed actions—and

11

ceaseless discovery requests seeking to assess the extent of their influence.

      c.    Regarding the discovery order's breadth, plaintiffs merely note that the district court rejected plaintiffs' request for USDS to disclose its recommendations. *See* Response 24. But plaintiffs make no effort to justify how any of their sweeping discovery is necessary for their claims. The discovery order's breadth is staggering. Pet. Reply 14-17 (describing the discovery requests). It extends to documents, memoranda, and even "planning" on topics including data access, cancellation of federal contracts, and employment decisions at federal agencies; detailed information about USDS personnel; internal communications and documents that USDS or Mr. Musk "created, compiled, or edited"; and information about actions that USDS or Mr. Musk "directed" or "plan[ned]" to direct federal agencies to take regarding contracts or employment. Dkt. No. 45-1, at 5-7.

Far from being necessary for plaintiffs' claims, plaintiffs' requests amount to a fishing expedition regarding all that "the [USDS] entities and [USDS] personnel have done and will soon do" regarding high-profile subjects on the President's agenda. Dkt. No. 51, at 2. And

12

plaintiffs have candidly admitted that their discovery requests pry into "how decision-making works" at USDS. *Id.* at 10. The Court should hold that the discovery order's intrusive fishing expedition against a close presidential advisor and a White House advisory body violates the separation of powers and must not recur.

d. Plaintiffs' remaining arguments lack merit. Contrary to plaintiffs' contention (Response 22-23), the Supreme Court's decision in *CREW* did not hold that some discovery against USDS was appropriate in that case; the Court stayed the *entire* discovery order, articulated governing principles, and remanded for application of those principles. *See CREW*, 2025 WL 1602338, at *1. In any event, regardless of whether any discovery is ultimately allowed in that FOIA case, the Court should correct the egregious errors in the discovery order at issue here.

Similarly, plaintiffs argue that discovery against the Executive Branch is not "categorically foreclosed" in all cases. *See* Response 17. But that is not responsive to the government's argument about discovery in this case. Plaintiffs cite (Response 16-17) two district court cases as examples of disclosures ordered from Executive Branch

13

advisors, but those cases concerned application of the presidential communications privilege, a question not at issue here, and neither presented remotely similar circumstances. *See United States Dep't of Treasury v. Pension Benefit Guar. Corp.*, 351 F. Supp. 3d 140, 152, 160 (D.D.C. 2018) (concerning a subpoena arising from a pension dispute under ERISA where the government was not a party); *Dairyland Power Co-op. v. United States*, No. 04-106 C, 2008 WL 8776547, at *1 (Fed. Cl. Mar. 17, 2008) (concerning a contract damages dispute).

 The proper analogue is instead the Supreme Court's decision in *CREW*, 2025 WL 1602338, at *1, which concerned a remarkably similar discovery order seeking to assess USDS's influence as to agency actions on the same topics. *See* Mot. 10. Following that decision, this Court should grant the mandamus petition, quash the discovery order, and thereby provide guidance to the district court.

## CONCLUSION

The Court should grant the government's mandamus petition to quash the March 12 discovery order and direct the district court not to order any equivalent or similar discovery order in this case.

Respectfully submitted,

> BRETT A. SHUMATE
>   *Assistant Attorney General*
>
> YAAKOV M. ROTH
>   *Principal Deputy Assistant*
>     *Attorney General*
>
> ERIC D. MCARTHUR
>   *Deputy Assistant Attorney*
>     *General*
>
> MARK R. FREEMAN
>   *s/ Joshua Dos Santos*
> JOSHUA DOS SANTOS
>   *Attorneys, Appellate Staff*
>   *Civil Division, Room 7224*
>   *U.S. Department of Justice*
>   *950 Pennsylvania Avenue NW*
>   *Washington, DC 20530*
>   *(202) 305-1754*
>   *joshua.y.dos.santos@usdoj.gov*

June 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify this reply complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Century, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,586 words, according to the count of Microsoft Word.

                                            s/ *Joshua Dos Santos*
                                             JOSHUA DOS SANTOS

## CERTIFICATE OF SERVICE

I certify that on June 30, 2025, I filed and served the foregoing with the Clerk of the Court by causing a copy to be electronically filed via the appellate CM/ECF system. I also hereby certify that the participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

                                            s/ *Joshua Dos Santos*
                                            JOSHUA DOS SANTOS